IN THE UNITED STATE DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| MELISSA KIGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 2:10-cv-00084 |
| ) | (Jury Demand) |
| JENNINGS FUNERAL HOMES, INC., ) | Campbell/Griffin |
| and FENTRESS MEMORIAL ) | |
| GARDENS, INC., a/k/a FENTRESS ) | |
| MEMORY GARDENS, INC., ) | |
| ) | |
| Defendants. ) | |

## CASE MANAGEMENT ORDER

A. <u>JURISDICTION</u>: The court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, as amended, *42 U.S.C. §2000e et seq.* ("Title VII") over the stated sexual discrimination and retaliation claims. Under *28 U.S.C. §1367* the court has supplemental jurisdiction over State-related claims asserted under the Tennessee Human Rights Act, *Tenn. Code Ann §4-21-101 et seq.* (the "THRA"), and various related State common law claims. Venue is properly situated in the Northeastern Division of the U. S. District Court for the Middle District of Tennessee pursuant to *28 U.S.C. §123*.

B. <u>BRIEF THEORIES OF THE PARTIES</u>:

(1) <u>PLAINTIFF</u>: The plaintiff is a female. The defendants are a funeral home and affiliated cemetery, with common shareholders. The plaintiff contends that these companies are joint employers and integrated enterprises for liability purposes. The plaintiff was hired in November 2009, and split job duties between the cemetery and the funeral home, working collectively at least 40 hours per week at both companies. Although salaried at both locations, she was also eligible for commissions when working at the cemetery. In

1

February 2010 the plaintiff was informed that she was being re-assigned to work full-time at the funeral home because one of the common shareholders, who oversaw the cemetery, was uncomfortable working alone at the cemetery with a female due to his religious beliefs. At the meeting to inform her of this decision, the plaintiff objected. Because of her objections the plaintiff was terminated at that meeting. She was then re-hired at the same meeting, but placed on probation and told that her employment with the cemetery was now a luxury. A few days later the plaintiff's employment was terminated. The plaintiff contends that the defendants illegally subjected her to gender discrimination, discharge and retaliation for opposing unlawful employment practices in violation of federal (Title VII) and State (THRA) law. The plaintiff has also asserted State law claims of outrageous conduct, infliction of emotional distress and a civil conspiracy. As a result of the defendants' wrongful actions, the plaintiff has suffered a tangible job loss, loss of income and benefits, and other compensable damages including punitive damages, attorneys fees and the right to reinstatement.

    (2)     DEFENDANTS:     Jennings Funeral Home hired Melissa Kiger on November 24, 2009 as a temporary office clerk. She was hired with the understanding that she would work full time in that position until January 2010 when a new office manager, previously hired, would assume those job duties. On January 15, 2010, she became a part time employee of Jennings Funeral Home working on weekends. She was then hired as a part time employee at Fentress Memorial Gardens as an office clerk/sales person. One of her assignments was to draft a newsletter that would be sent to Fentress Memorial Gardens customers. She performed her job duties satisfactorily during the two and one-half months she was employed, but she was late for work on twenty-nine occasions, left early on seven occasions and was absent twelve days she was scheduled to work.

On February 4, 2010, Ms. Kiger brought her personal laptop computer to work at Fentress Memorial Gardens. Shortly after arriving at the workplace, she invited Steve Looper, owner/manager of Fentress Memorial Gardens, to come into her office and close the door. When Mr. Looper declined to do so, she became very emotionally upset, and told Mr. Looper there was pornography on her personal computer that she wanted him to view. He declined again. Ms. Kiger became so emotional, sobbing loudly and screaming, that Mr. Looper asked another employee to take her home.

Later that day, Ms. Kiger informed Mr. Jennings that the computer belonged to her husband, John Kiger, and that the pornography website had "popped up" with Mr. Kiger's name and personal information. Ms. Kiger stated to Mr. Jennings that she had an appointment with an attorney and intended to initiate divorce proceedings. Ms. Kiger later decided that her husband was not at fault and not to pursue a divorce.

Mr. Looper and Mr. Jennings were very concerned with Ms. Kiger's volatile and disruptive behavior and her introduction of pornography into the workplace. Mr. Looper was especially concerned with Ms. Kiger's insistence that he view the pornography and did not wish to work alone with her. In addition, Fentress Memorial Gardens had experienced a financial short-fall in the months of January and had difficulty paying her wages. For these reasons, Mr. Jennings and Mr. Looper decided to assign Ms. Kiger to work at Jennings Funeral Home on Thursdays and Fridays and weekends as needed, and at Fentress Memorial Gardens on Wednesdays and by appointment on any other days as needed when Mr. Looper would not be present. They also decided that on occasions when Ms. Kiger needed to work at the Fentress Memorial Gardens site, they would ensure that a third employee was present.

Mr. Jennings informed Ms. Kiger during the week of February 8, 2010 that her job site had changed to Jennings Funeral Home, that she would be doing essentially the same job, would receive the same number of hours, the same rate of pay, and would receive commissions on cemetery lot sales. She raised no objection to this.

On February 17, 2010, Ms. Kiger worked a funeral visitation at Jennings Funeral Home. She expressed to a fellow employee, Adam Beaty, that she was concerned about her relocation and complained that she was doing work for which her employer was "getting credit". She

3

pressed Mr. Beaty for information, and he explained that it was his understanding that Mr. Jennings and Mr. Looper did not want a man and a woman working alone together. This upset Ms. Kiger to the point that she began sobbing loudly and screaming. She informed Mr. Beaty that she was quitting her job. She then left the workplace.

Mr. Jennings and Mr. Looper arranged a meeting with Mr. and Ms. Kiger on February 18, 2010 to explain their employment policy regarding male and female employees working together. Mr. Jennings had a policy that no man and woman would work together without a third person being present. This was intended not only to protect the reputation of the business but also the reputations of the employees. Mr. Looper explained that he also practices this in his ministry, as he is a church minister and must be particularly careful to protect his reputation.

Ms. Kiger disagreed that the policy was necessary and expressed great displeasure with it. She stated that she felt Mr. Jennings and Mr. Looper were treating her unfairly. Her expressions of disapprobation escalated to the point of sobbing and screaming.

Mr. Jennings told Ms. Kiger that such expressions of emotion could not be tolerated in the workplace. Ms. Kiger retrieved her personal belongings from her desk and announced she was "going home". Mr. Jennings agreed that was the best thing and asked that she return her office keys and company cell phone. Mr. Kiger intervened, stating that his wife needed her job. Mr. Looper suggested that he and Mr. Jennings give her another chance and allow her to work on a probationary basis for another week. The four agreed to meet again the next week and Mr. Jennings instructed Ms. Kiger to report for work at Jennings Funeral Home that evening. Ms. Kiger worked the next two days without incident.

On Saturday, February 20, 2010, Ms. Kiger, Mr. Jennings, and Adam Beaty worked during the morning at Jennings Funeral Home. Mr. Jennings and Mr. Beaty were meeting in an office adjacent to the room where Ms. Kiger worked. At 9:07 a.m. Mr. Jennings received the following text message from Ms. Kiger on his cell phone:
> "He's in the other room talking to Adam. I'm trying to hear. I'm getting the newsletters tonite. He's talking @ it I think."

When Mr. Jennings confronted Ms. Kiger with this text message she stated that she had

intended to send it to her husband but had accidently sent it to Mr. Jennings. She insisted that "it is nothing". She offered no further explanation. Mr. Jennings contacted Mr. Looper to discuss the situation. Based upon Ms. Kiger's eavesdropping and threats to steal company property (the newsletters), as well as her frequent emotional outbursts, introduction of pornography into the workplace, frequent absences and tardiness, they decided to discharge her.

At the close of business on Saturday, February 20, 2010, Mr. Jennings informed Ms. Kiger that her services were no longer needed. He requested she return her keys and her company cell phone. Ms. Kiger threatened litigation and her husband, who was there during the termination, threatened Mr. Jennings with bodily injury. Both Mr. and Ms. Kiger refused to leave the Jennings Funeral Home premises until the police arrived and escorted them off.

Defendants deny all of Plaintiff's claims and request the Court award their attorneys fees pursuant to 42 U.S.C. § 1988 and T.C.A. § 50-1-304(F).

C. <u>ISSUES RESOLVED</u>: Jurisdiction and venue.

D. <u>ISSUES STILL IN DISPUTE</u>: Liability and damages.

E. <u>INITIAL DISCLOSURES</u>: The parties shall exchange initial disclosures pursuant to FED. R. CIV. P. 26(a)(1) on or before **Friday, November 19, 2010**.

F. <u>DISCOVERY</u>: The parties shall complete all written discovery and depose all fact witnesses on or before **Friday, July 15, 2011**. Discovery is not stayed during dispositive motions, unless ordered by the court. Local Rule 9(a)(2) is expanded to allow 40 interrogatories, including subparts. No motions concerning discovery are to be filed until after the parties have conferred in good faith and, unable to resolve their differences, have scheduled and participated in a conference telephone call with Magistrate Judge Griffin.

G. MOTIONS TO AMEND: The parties shall file all Motions to Amend on or before **Friday, March 18, 2011.**

H. <u>DISCLOSURE OF EXPERTS</u>: The plaintiff shall identify and disclose all expert

witnesses, if any, and expert reports on or before Friday, **Friday, July 1, 2011**. The defendant shall identify and disclose all expert witnesses, if any, and reports on or before **Monday, August 15, 2011**.

I. DEPOSITIONS OF EXPERT WITNESSES: The parties shall depose all expert witnesses on or before **Friday, September 16, 2011**.

J. DISPOSITIVE MOTIONS: The parties shall file all dispositive motions on or before **Friday, September 23, 2011**. Responses to dispositive motions shall be filed within thirty-one (31) days after the filing of the motion. Optional replies may be filed within fourteen (14) days after the filing of the response. Briefs shall not exceed 25 pages.

K. ELECTRONIC DISCOVERY. The parties have reached agreements on how to conduct electronic discovery. Therefore, the default standard contained in Administrative Order No. 174 need not apply to this case.

L. ESTIMATED TRIAL TIME: The parties expect the trial to last approximately **2.5-3** days.

It is so **ORDERED.**

Juliet Griffin
United States Magistrate Judge

Agreed To:

/s/Kenneth S. Williams
Kenneth S. Williams, Esq. (#10678)
Cynthia A. Wilson, Esq. (#13145)
Madewell, Jared, Halfacre, Williams & Wilson
230 No. Washington Avenue
Cookeville, Tennessee 38501
(931) 526- 6101 (telephone) (931) 528-1909 (fax)
Counsel for Plaintiff Melissa Kiger

/s/ Melanie Lane
Melanie Lane, Esq. (#026423)
Romer, Deaton & Lane, PLLC
P.O. Box 797
Jamestown, Tennessee 38556-0797
(931) 879-8144 (telephone) (931) 879-8145 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was sent to Melanie Lane, Esq. Romer, Deaton & Lane, PLLC, P.O. Box 797, Jamestown, Tennessee 38556-0797, via the Court's electronic filing system this 1st day of November, 2010.

/s /Kenneth S. Williams    11/1/2010
       Attorney              Date